E-FILED
Thursday, 25 June, 2026  10:51:31 AM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

FERNANDO VASQUEZ,
    Plaintiff,

v.

    Case No. 2:23-cv-02041-JEH

WEXFORD HEALTH SOURCES, *et al.*,
    Defendants.

**Order**

Plaintiff Fernando Vasquez, who is incarcerated at Danville Correctional Center ("Danville"), filed a Complaint under 42 U.S.C. § 1983 alleging Defendants Dr. Jonathan Ek and Jennifer Chacon were deliberately indifferent to his serious medical needs by failing to provide adequate treatment for his painful knee injury. This matter is now before the Court on Defendants' Motions for Summary Judgment under Federal Rule of Civil Procedure 56 and Local Rule 7.1(D). (Docs. 62, 71). For the reasons stated below, Defendants' Motions are GRANTED.

**I**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and

1

draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In order to successfully oppose a motion for summary judgment, a plaintiff must do more than raise a "'metaphysical doubt' as to the material facts, and instead must present definite, competent evidence to rebut the motion." *Michael v. St. Joseph Cnty.*, 259 F.3d 842, 845 (7th Cir. 2001) (internal citation omitted).

## II

The Court finds the following material facts. During the relevant period, Plaintiff was in the custody of the Illinois Department of Corrections ("IDOC") and incarcerated at Danville. Defendant Jennifer Chacon was the Healthcare Unit Administrator at Danville. Defendant Dr. Jonathan Ek was employed by Wexford Health Sources as the Site Medical Director at Danville beginning in June 2020. (Doc. 71-1 at ¶ 2).

As the Site Medical Director, Defendant Ek routinely provided care for inmates with knee injuries and was familiar with the standard of care for treating knee injuries. Defendant Ek did not have control over whether a specific medical device, such as crutches or a knee brace, could be brought from an outside hospital into Danville. Defendant Ek ordered medical devices for his patients if he believed the devices were medically necessary. Defendant Ek did not personally dispense medical devices; other staff members were responsible for dispensing the devices in compliance with his orders. Defendant Ek was not responsible for scheduling inmates' appointments with medical providers at Danville or specialists outside the facility. *Id.* at ¶¶ 12, 14-16.

On October 24, 2018, Plaintiff's right knee gave out while walking down the stairs in the dayroom at Danville. Plaintiff was examined by a Licensed Practical

2

Nurse ("LPN"), who noted that Plaintiff's knee was not swollen but did have some redness; Plaintiff was unable to extend his leg; and Plaintiff had strong pedal pulses. The LPN also noted a possible muscle sprain in Plaintiff's knee. Plaintiff was given crutches, ice, ibuprofen, and an ace wrap for his knee. An x-ray of Plaintiff's knee was scheduled, and Plaintiff was told not to use the gym or the exercise yard for two weeks. *Id.* at ¶ 18; Doc. 71-3 at pp. 10-11.

Plaintiff's knee was x-rayed on October 25, 2018. The radiologist reviewed the x-rays on October 26, 2018, and noted Plaintiff had no fractures or dislocations and no visible "sizable joint effusion or loose body" within the knee. (Doc. 71-1 at ¶ 19). The radiologist noted some "[m]inor degenerative changes" were visible. *Id.*

On December 21, 2018, Plaintiff was seen by a nurse practitioner to discuss his x-ray results. Plaintiff complained of intermittent pain in his right knee and stated it felt like his knee was "popping" or "giving way." *Id.* at ¶ 22; Doc. 71-3 at p. 15. The nurse practitioner provided Plaintiff with stretching exercises to strengthen his knee and advised Plaintiff to take ibuprofen for the pain.

Plaintiff was not seen again for any complaints of knee pain until October 7, 2020, when Plaintiff re-injured his knee. Plaintiff was examined by a nurse practitioner, who noted severe swelling, pain, limited range of motion, and an inability to bear weight on that leg. The nurse practitioner called Defendant Ek to advise him of the injury and discuss treatment options. Defendant Ek ordered Plaintiff to be sent to the emergency room for treatment. (Doc. 71-1 at ¶¶ 24, 26; Doc. 71-3 at pp. 15-22).

The same day, Plaintiff was taken to Carle Hospital in Urbana, Illinois, where he was examined by Dr. Valerie Pollard. Plaintiff was discharged with instructions to (1) schedule a follow up appointment with orthopedics, (2) receive a knee immobilizer and crutches, and (3) take naproxen for pain. Dr. Pollard did

not indicate any ligament tears in Plaintiff's knee or in the discharge paperwork. (Doc. 71-1 at ¶ 27; Doc. 71-4 at pp. 100-119).

When Plaintiff returned to Danville, he was examined by a nurse, who noted that Plaintiff was wearing a knee immobilizer. The nurse contacted Defendant Ek for instructions on how to treat Plaintiff. Based on Dr. Pollard's discharge instructions, Defendant Ek prescribed naproxen to be taken twice daily and ordered Plaintiff to remain in the infirmary for twenty-three hours. (Doc. 71-1 at ¶ 28; Doc. 71-3 at p. 23).

On October 8, 2020, Defendant Ek examined Plaintiff and issued a low bunk permit, a low gallery permit, and a crutches permit for one month and ice packs for three days. Plaintiff was discharged from the infirmary and returned to his housing unit. Defendant Ek also submitted a referral for Plaintiff to be sent to Carle Hospital's orthopedics department. Defendant Ek's referral was approved on October 20, 2020. (Doc. 71-1 at ¶¶ 29-30; Doc. 71-3 at pp. 25-27, 65, 80-81).

On December 1, 2020, Plaintiff was transported to Carle Orthopedics and examined by Dr. David Zeman, who noted the possibility of torn cartilage and/or a ligament sprain. Dr. Zeman ordered an MRI of Plaintiff's knee. Defendant Ek reviewed Dr. Zeman's plan of care and submitted the referral request for the MRI on December 2, 2020. The referral request was approved on December 3, 2020. (Doc. 71-1 at ¶¶ 33-34; Doc. 71-3 at pp. 83-84; Doc. 71-4 at pp. 20-24).

On February 11, 2021, Plaintiff underwent an MRI, which revealed that Plaintiff had a "remote ACL tear" and meniscus tears. The MRI results were forwarded to Dr. Zeman at Carle Orthopedics, who referred Plaintiff to Dr. James Liu, a surgeon at Carle. On February 12, 2021, Dr. Liu determined that Plaintiff was not a candidate for surgery because of the ability to manage the condition through physical therapy. A follow-up appointment for physical therapy was requested from Carle Hospital. (Doc. 71-1 at ¶¶ 37-38; Doc. 71-4 at pp. 80-83).

On April 9, 2021, Carle Hospital scheduled Plaintiff for a follow-up visit with Dr. Zeman on April 30, 2021. (Doc. 71-1 at ¶ 41; Doc. 71-3 at p. 41). On April 30, 2021, Dr. Zeman diagnosed Plaintiff with torn right knee cartilage and recommended follow up physical therapy. (Doc. 71-1 at ¶ 42; Doc. 71-3 at p. 86; Doc. 71-4 at pp. 12-14). Dr. Zeman gave Plaintiff a knee brace and exercise strap. Upon returning to Danville, Plaintiff's knee brace was altered, and the exercise strap was not returned to him. (Doc. 62-1 at 28:20-30:4).

On May 3, 2021, Defendant Ek submitted a referral for Plaintiff to be sent to Carle Orthopedics for physical therapy. The referral request was approved on May 6, 2021. (Doc. 71-1 at ¶ 45; Doc. 71-3 at p. 89).

On May 9, 2021, Plaintiff filed a grievance regarding the treatment of his knee injury. (Doc. 62-5 at pp. 3-4). Defendant Chacon responded to the grievance on June 11, 2021. *Id.* at p. 1.

Plaintiff had physical therapy appointments at Carle on June 7, 2021, June 30, 2021, July 7, 2021, July 14, 2021, and July 21, 2021. (Doc. 71-1 at ¶¶ 46-48, 50-51). During his appointment on June 7, 2021, Plaintiff was provided with a home exercise routine which he could perform by himself at Danville. The physical therapist recommended a weekly physical therapy regimen for four weeks. (Doc. 71-3 at pp. 49, 88).

On June 12, 2021, Plaintiff was seen at nurse sick call for his right knee. (Doc. 62-1 at 33:4-8).

During the physical therapy appointment on June 30, 2021, the physical therapist gave Plaintiff a printout of the exercises he needed to perform at Danville. (Doc. 71-4 at pp. 56-59). On July 7, 2021, Plaintiff reported he was performing the exercises daily and his pain and range of motion were improving. Plaintiff received another printout of the exercises he needed to perform. *Id.* at pp. 52-55. On July 14, 2021, Plaintiff's range of motion had noticeably improved.

Plaintiff's home exercises were updated again, and he received a printout of the exercises. *Id.* at pp. 48-51. During Plaintiff's final physical therapy appointment on July 21, 2021, Plaintiff explained that "he does feel like he has made improvements" with his range of motion and ambulating as a result of physical therapy. The physical therapist discharged Plaintiff from future visits and instructed him to continue doing the home exercises to improve his knee. *Id.* at pp. 44-47. After being discharged from physical therapy, Plaintiff did not complain about his knee or physical therapy. (Doc. 71-1 at ¶ 52; Doc. 71-3 at pp. 58-60).

On July 7, 2021, Plaintiff filed a grievance regarding the treatment of his knee injury. (Doc. 62-4 at pp. 3-4). Defendant Chacon responded to the grievance on August 16, 2021. *Id.* at p. 1. On August 11, 2021, Plaintiff filed another grievance regarding the treatment of his knee injury. (Doc. 62-3 at pp. 3-4). Defendant Chacon responded to the grievance on September 17, 2021. *Id.* at p. 1. On September 28, 2021, Plaintiff filed a grievance regarding the treatment of his knee injury. (Doc. 62-2 at pp. 3-4). Defendant Chacon responded to the grievance on November 12, 2021. *Id.* at p. 1.

Plaintiff testified he sued Defendant Chacon based only on her role in responding to his medical grievances. (Doc. 62-1 at 8:24-9:3, 10:5-7). Plaintiff also testified he never talked to Defendant Chacon in person, and Defendant Chacon did not provide Plaintiff with medical treatment. *Id.* at 8:21-23, 9:4-12.

### III

As an initial matter, Plaintiff did not dispute any of Defendants' material facts. (Docs. 74, 77). Local Rule 7.1(D)(2)(b) obligates a party opposing a motion for summary judgment to respond to the moving party's undisputed material facts and provide new material facts, which must be supported by admissible evidence. *See* Civil LR 7.1(D)(2)(b). Under Local Rule 7.1(D)(2)(b)(6), a party's "failure to

respond to any numbered fact will be deemed an admission of the fact." *Id.* at 7.1(D)(2)(b)(6).

In response to Defendants' Motions for Summary Judgment, Plaintiff states that Defendants' material facts 1-18 are undisputed. (Doc. 74 at p. 3; Doc. 77 at p. 4). Plaintiff does not address material facts 19-32 of Defendant Ek's Motion for Summary Judgment. *Id.* Since Plaintiff does not dispute statements 1-18 and does not address statements 19-32, this Court will apply Local Rule 7.1(D)(2)(b)(6) and consider all of Defendants' undisputed material facts as admitted for purposes of summary judgment. Civil LR 7.1(D)(2)(b)(6); *see also Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (relying on defendants' statements of material facts not an abuse of discretion where the *pro se* plaintiff did not comply with local rules).

Defendants argue they were not deliberately indifferent to Plaintiff's knee injury. It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id.* An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522.

To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The prisoner must show that the defendant engaged in more

7

than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837).

Defendants do not dispute that Plaintiff's knee injury was an objectively serious medical condition. Therefore, the Court will focus its analysis on the subjective component of Plaintiff's deliberate indifference claim.

## A

In her Motion for Summary Judgment, Defendant Chacon argues she is entitled to summary judgment because she was not personally involved in Plaintiff's medical treatment, was not deliberately indifferent to his knee injury, and is entitled to qualified immunity. (Doc. 62).

## 1

First, Defendant Chacon argues she was not personally involved with Plaintiff's medical treatment. "The doctrine of *respondeat superior* does not apply to § 1983 actions." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). "[T]hus, to be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right.'" *Id.* (internal citation omitted). Section 1983 claims must be "based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("[o]nly persons who cause or participate in the violations are responsible.").

Plaintiff testified Defendant Chacon was the chief administrative officer in the medical department for medical grievances. (Doc. 62-1 at 8:11-14). Plaintiff testified he sued Defendant Chacon because she "signed off on all the medical documents related to [his] grievances and medical furloughs." *Id.* at 8:24-9:3. Plaintiff testified he never spoke with Defendant Chacon in person. *Id.* at 8:21:23.

8

Plaintiff admitted Defendants Chacon never provided him with medical treatment, diagnosed him with any medical condition, or prescribed any medication. *Id.* at 9:4-12.

In Plaintiff's Response, Plaintiff argues "[i]t may be implied that [he] attempted on several occasions to contact Defendant and in fact Defendant responded with no treatment or proper medical attention." (Doc. 74 at p. 7). Plaintiff did not provide any evidence regarding his attempts to contact Defendant Chacon. Plaintiff states he "attached grievances, exhibits, declarations, and medical reports in support of his claim," but there were no documents attached to his Response. (Doc. 74). The Court finds that Defendant Chacon is entitled to summary judgment because there is no evidence she was personally involved with Plaintiff's medical treatment.

**2**

Second, Defendant Chacon argues she was not deliberately indifferent to Plaintiff's medical needs. To respond to Plaintiff's grievances, Defendant Chacon reviewed Plaintiff's medical records and found that he received treatment for his knee injury from several medical providers at Danville and outside specialists. For instance, in response to the grievance Plaintiff filed on May 9, 2021, Defendant Chacon stated:

> [P]er medical record review, grievant was referred to Dr. Zeman at Carle. Dr. Zeman saw grievant on 12/1/20 and recommended an MRI (done 2/11/21) and a knee immobilizer and exercise. Grievant was given the knee brace. Grievant was seen again by Dr. Zeman on 4/30/21. Dr. Ek reviewed notes and charted that possible tear in meniscus is likely to heal with surgery (per Dr. Liu). Flexible brace continued and strengthening exercises. Grievant will be seen for physical therapy in June. Carle medical records need to be requested at Carle.

(Doc. 62-5 at p. 1). In response to the grievance Plaintiff filed on July 7, 2021, Defendant Chacon stated:

> [P]er medical record review, if the patient wants MRI results from Carle Hospital, he must request them from Carle Hospital not Danville CC. Patient has been sent out for physical therapy treatment to Carole on 6/7/21, 6/30/21 and 7/7/21, 7/14/21 and 7/21/21. The physical therapist provided "at home" exercises to do daily. Dr. Ek wrote orders on 7/21/21 that patient should continue with the home exercise plan and use ice daily for swelling. The therapist from Carle charted that patient has made "great gains" with his strength and movement.

(Doc. 62-4 at p. 1). In response to the grievance Plaintiff filed on August 11, 2021, Defendant Chacon stated: "[P]er medical record review, individuals in custody are not told the dates of their external medical appointments for security reasons. On 7/21/21, the physical therapist wrote orders to continue with HEP (home exercise program), use ice and follow up with Dr. Ek as needed." (Doc. 62-3 at p. 1).

In response to the grievance Plaintiff filed on September 28, 2021, Defendant Chacon stated: "[P]atient saw Dr. Ek on 10/12/21. Dr. Ed charted that the patient showed good improvement with his knee following the home exercise plan he's been using. Dr. Ek wrote orders to continue these exercises and follow up in 3 months." (Doc. 62-2 at p. 1).

The evidence shows that Plaintiff received consistent treatment for his knee injury, including multiple visits with specialists at an outside hospital, examinations with Defendant Ek, and multiple physical therapy appointments. No reasonable jury would find that Defendant Chacon was deliberately indifferent to Plaintiff's medical needs in violation of the Eighth Amendment.

**3**

Having found that Defendant Chacon did not violate Plaintiff's Eighth Amendment rights, the Court need not address whether Defendant Chacon is

10

entitled to qualified immunity. *See Johns v. Tinsley*, No. 16-1106-JES, 2018 WL 10811472, at *5 (C.D. Ill. Mar. 7, 2018) (citing *Van den Bosch v. Raemisch*, 658 F.3d 778, 787 n. 9 (7th Cir. 2011)).

**B**

In his Motion for Summary Judgment, Defendant Ek argues he is entitled to summary judgment because he did not delay Plaintiff's medical treatment and was not deliberately indifferent to Plaintiff's serious medical needs. As a preliminary matter, Defendant Ek is entitled to summary judgment on Plaintiff's claim regarding his knee injury on October 24, 2018. Defendant Ek began working at Danville in June 2020. (Doc. 71-1 at ¶ 2). As a result, Defendant Ek cannot be held liable for any claim related to Plaintiff's 2018 knee injury. *See Kendrick v. Frank*, 310 F. App'x 34, 38 (7th Cir. 2009) (when the defendant doctor did not examine the plaintiff during a relevant period, the doctor cannot be held liable because he had no personal involvement in that care).

**1**

Regarding Plaintiff's second knee injury on October 7, 2020, Defendant Ek argues he did not delay treatment because he ordered Plaintiff to be sent to the emergency room the same day. On October 8, 2020, Defendant Ek examined Plaintiff and submitted a referral for Plaintiff to be sent to an orthopedic specialist. Plaintiff saw an orthopedic specialist, Dr. Zeman, on December 1, 2020. Defendant Ek complied with Dr. Zeman's recommendations and referred Plaintiff for an MRI.

Plaintiff underwent an MRI on February 11, 2021. The next day, Plaintiff saw an orthopedic surgeon, who recommended physical therapy. A follow-up appointment was requested from Carle Hospital.

After Plaintiff's follow-up appointment with Dr. Zeman on April 30, 2021, Defendant Ek submitted a referral for Plaintiff to be sent to Carle Orthopedics for physical therapy on May 3, 2021. The referral request was approved on May 6,

2021. Plaintiff's first physical therapy appointment was on June 7, 2021. Plaintiff attended additional physical therapy sessions on June 30, 2021, July 7, 2021, July 14, 2021, and July 21, 2021.

There is no evidence Defendant Ek delayed Plaintiff's medical treatment. Instead, the evidence shows Plaintiff received prompt and consistent care. Defendant Ek was not responsible for personally scheduling appointments with medical providers for inmates, either within the IDOC system or with outside specialists. (Doc. 71-1 at ¶ 14). Even if Defendant Ek delayed Plaintiff's medical care, Plaintiff cannot survive summary judgment because he presented no verifying medical evidence that a delay caused him harm. *See Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) ("In cases such as this one—where the plaintiff alleges the defendant delayed, rather than denied, medical treatment—we have required that the plaintiff present "verifying medical evidence" that the delay, and not the underlying condition, caused some harm.") (citations omitted).

**2**

Defendant Ek also argues he is entitled to summary judgment because he was not deliberately indifferent to Plaintiff knee injury. (Doc. 71 at pp. 12-13).

In Plaintiff's Response to Defendant Ek's Motion for Summary Judgment, Plaintiff states that he "attached grievances, exhibits, declarations, and medical reports in support of his claim," and those exhibits allegedly demonstrate that Defendant Ek is "not entitled to summary [j]udgment" because Plaintiff "has [met] and shown a genuine dispute of material facts . . . ." (Doc. 77 at p. 8). It is not the Court's responsibility to "scour the record in search of facts or evidence" to support Plaintiff's position; it is Plaintiff's job to identify, "with reasonable particularity the evidence upon which he relies." *Sokoya v. Downey*, No. 06-2219, 2009 WL 773523, at *2 (C.D. Ill. Mar. 20, 2009) (internal quotations and citations

omitted); *see also Greer v. Bd. of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) ("a lawsuit is not a game of hunt the peanut").

Defendant Ek sent Plaintiff to the emergency room on October 7, 2020, the same day his injury occurred. *See Mathison v. Moats*, 812 F.3d 594, 598 (7th Cir. 2016) (doctor "cannot be thought to have exhibited deliberate indifference" when he "promptly summoned an ambulance to take [inmate] to the nearest hospital emergency room."). The following day, Defendant Ek examined Plaintiff, implemented the emergency room physician's recommendations, and issued a low bunk, low gallery, and crutches permits for one month. Defendant Ek also referred Plaintiff to an orthopedic specialist and promptly followed the specialist's recommendation to refer Plaintiff for an MRI.

On January 14, 2021, Defendant Ek renewed Plaintiff's low bunk, low gallery, and knee immobilizer permits through July 2021. (Doc. 71-1 at ¶ 36; Doc. 71-3 at pp. 32-33). Following the MRI on February 11, 2021, Plaintiff was seen by an orthopedic surgeon, who recommended physical therapy. Defendant Ek submitted a referral for Plaintiff to be sent for physical therapy. Plaintiff had appointments with a physical therapist on June 7 and 30 and July 7, 14, and 21, 2021. After completing physical therapy, Plaintiff did not complain to Defendant Ek about his knee or physical therapy. Based on the evidence, no reasonable jury would find that Defendant Ek was deliberately indifferent to Plaintiff's knee injury. Defendant Ek is entitled to summary judgment.

## IV

For the reasons stated, *supra*:

(1)     Defendants' Motions for Summary Judgment [62], [71] are GRANTED. Defendants Ek and Chacon are DISMISSED WITH PREJUDICE. Plaintiff takes nothing. Each side is to bear their own attorney's fees, costs, and expenses. The Clerk is directed to enter judgment and close this case.

(2)     Should a party file a motion for reconsideration which is subsequently denied by the Court, the party who filed the motion will be responsible for the attorney's fees of the opposing party related to their response to the motion for reconsideration.

(3)     Plaintiff remains responsible for paying any remainder of the $350 filing fee. (See d/e 5/10/2023).

(4)     If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).

(5)     To proceed *in forma pauperis* on appeal, Plaintiff must file a motion to proceed on appeal *in forma pauperis* and identify the issues he will present on appeal to assist the Court in determining whether the appeal is taken in good faith. Fed. R. App. P. 24(a)(1)(c); *Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (An appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff chooses to appeal, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal.

*It is so ordered.*

Entered: June 25, 2026

s/Jonathan E. Hawley
U.S. District Judge

14